**In re Ralph Richard BOERNER and Rebecca Lynn Boerner, Debtors.**

**GMA, INC., Plaintiff,**

**v.**

**Ralph Richard BOERNER and Rebecca Lynn Boerner, Defendants.**

Bankruptcy No. 7–83–00775 R R.

Adv. No. 85–0122 R.

United States Bankruptcy Court, D. New Mexico.

Feb. 12, 1987.

Harold Morgan, Albuquerque, N.M., for debtor.

Patricia Bradley, Albuquerque, N.M., for GMA, Inc.

MEMORANDUM OPINION

STEWART ROSE, Chief Judge.

This adversary was filed to determine the dischargeability of a debt. The debtor's corporation ("Crown") sold certain accounts to the creditor ("GMA") at a discount. GMA took a security interest in the receivables. GMA's officer testified that the only notification given to account debtors was a change of the post office box for remitting payments. Certain payments were nonetheless sent to Crown and never found their way to GMA's coffers. No evidence was presented to indicate that the debtor acted to divert payments made by the account debtors prior to receipt by Crown. Nor was it shown that the debtor took for his own personal use monies trace-

able to payments on the accounts sold to GMA. The debtor signed as personal guarantor of one of the contracts with GMA.

■ The creditor now seeks to have the debt resulting from these transactions declared non-dischargeable as "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6) (1982).[1] The creditor asserts that the debtor's failure to turn over the amounts paid on the accounts constitutes a conversion or willful and malicious injury to property. Two issues are thus presented: (1) whether the facts state a claim of conversion and (2) whether Debtor's conduct was willful and malicious.

Sales of accounts are secured transactions governed by the U.C.C. N.M.S.A. 1978 § 55–9–102 (Orig.Pamp. & Supp.1986). Under the U.C.C., Crown's receipt and deposit of the payments were proper. Account debtors may continue making payments to the debtor unless notified of the assignment *and* of the fact that payments are to be sent to the assignee (creditor). N.M.S.A. § 55–9–318. By the creditor's own testimony, notification of the assignment was intentionally not given to account debtors. Therefore, only one of the two statutory requirements was met.

Furthermore, Crown had the right to deposit the received payments, subject to the contractual obligation to "hold them separate ... upon an express trust"[2] for the creditor. It is well settled that "trust" language in financing transactions such as this does not create a technical trust, and thus no fiduciary duty falls on the debtor, *see Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), *In re Clifton*, 32 B.R. 666 (Bankr.D.N.M. 1983). The debtor's failure to abide by the "trust" provisions of the sales contracts, without more, does not constitute wrongfulness as required for conversion, *see Evans v. Mortgage Investment Co. of El Paso, Texas*, 84 N.M. 732, 507 P.2d 793 (Ct.App.1973). Only the subsequent non-payment may constitute breach or conversion.

■ In bankruptcy, numerous cases discuss whether the failure to turn over payments to a financing creditor may except a debt from discharge. *In re Tester*, 62 B.R. 486 (Bankr.W.D.Va.1986), *In re Holtz*, 62 B.R. 782 (Bankr.N.D.Iowa 1986), *In re Vandrovec*, 61 B.R. 191 (Bankr.D.N.D. 1986), *In re Egan*, 52 B.R. 501 (Bankr.D. Minn.1985), *In re Eisner*, 35 B.R. 86 (Bankr.N.D.Ohio 1983). Several cases conclude that a debt resulting from such conduct may be nondischargeable. *Holtz, supra, Eisner, supra, In re Beaseley*, 62 B.R. 653, 15 C.B.C.2d 166 (Bankr.W.D.Mo. 1986). "Exceptions to discharge are construed narrowly, and the burden ... is on the party opposing discharge." *In re Black*, 787 F.2d 503, 505 (10th Cir.1986). The primary inquiry looks at the debtor's conduct and the disposition of the funds as evidence of aggravating circumstances. *Holtz, Eisner,* and *see In re Clifton*, 32 B.R. 666 (Bankr.D.N.M.1983). Willfulness and maliciousness must be proven by clear and convincing evidence. *In re Phillips*, 804 F.2d 930 (6th Cir.1986), *McCelvey v. Fulgham (In re Fulgham)*, 70 B.R. 168, 170 (Bankr.D.N.M.1986).

The dispositive question then is whether the creditor has made a clear and convincing showing that the debtor acted willfully and maliciously. The testimony at trial fell far short of such a showing. The relevant evidence was that the debtor went to the creditor's office to discuss the problem; the debtor did pay part of the debt with corporate checks; the debtor gave a security interest in personal assets to protect the creditor; the debtor was not managing the business during much of the time in question; and except in one instance the debtor

---

**1.** Although the complaint and amended complaint refer only to 11 U.S.C. § 523(a)(2), the pre-trial process, including the creditor's Motion for Summary Judgment, cast the issue in terms of conversion under § 523(a)(6).

**2.** Paragraph 4 of Contract for Sale of Accounts Receivable and Contract Rights and Security Agreement, Plaintiff's exhibit 1.

did not personally control disposition of payments received. Such facts do not indicate maliciousness or willfulness.

The conclusion derived from the above is that, even if debtor's conduct constituted a technical conversion of the creditor's property, the required elements of Section 523(a)(6) were not proven.

The foregoing constitutes findings of fact and conclusions of law.

Counsel shall submit for entry a form of judgment.